And you can leave that material with the clerk.  Okay, the next case for argument, if you could keep your voices down, the next case for argument is 15-2048, Moddha Interactive v. Philips Electronics. Mr. Schmidt, I think we're all ready. May it please the court, good morning and since I am from Hawaii, aloha. I'm Mr. Schmidt. I represent Moddha International. Let me just address a couple of points if I could please. First, the core of the appeal is the court's error in granting a motion to dismiss with factual issues clearly before the court. While Moddha noted in its second amendment complaint that HIT was suspicious of the fact that Philips Electronics was using its technology and its products in the summer of 2008, at the hearing level, the court was required to listen to Moddha's representation that it was not until late 2010, early 2011, that it had all the understanding that it needed to understand that Philips was infringing upon its patents. Before I get to that, I do have a question about that. As I understand it, if we find that the trial court was correct on the statute of limitations issues, wouldn't that control all of the claims? In other words, wouldn't the statute of limitations bar apply even to the claims that the court found to be preempted? That's true for almost all the claims, Your Honor, except if you were to remand and we were still to have a breach of contract claim, which did not relate to a trade secret, we would still have, under Hawaii law, a six-year statute, which would, if the court also agreed that it related back, we would still have a breach of contract claim, which I believe is accounted for. We would still have that claim. I don't understand. Related back to which complaint? To the 2012 complaint, Your Honor. The first complaint. The first complaint. Which only had patent infringement. It was. Moddha, at the time, was looking at a pure patent infringement case, and it did not realize that it had significant hearings it had to go through to prove patent infringement, so by the time we came on board in summer of 2011, it knew that it did not have those funds to go to those hearings and prevail. What do you mean, go to those hearings? You mean like Markman hearings? Yes, ma'am.  You're saying by 2011, it knew that it wasn't going to pursue the patent infringement action it filed in 2012? No, Your Honor. By 2014, when we became involved. Oh, 2014. I'm sorry. I thought you said 2011. No. In 2011, it knew of all the elements that it needed to prove the patent infringement case. Okay. Let's start with Relation Back then, because I think that's important, because you'd have to have Relation Back in order to still have a contract claim. My problem is that the Relation Back, in order to Relate Back, it's got to arise at the same transaction or occurrence, and here, what you're saying is that their current production of product, the original claim, infringes the claims of our patents. That was what your original claim was, as opposed to a claim that ultimately gets asserted that says your conduct back in the day was fraudulent and deprived us of other opportunities. How is that the same transaction or occurrence? Okay. So the same transaction or occurrence is Phillips acquiring, basically, the cookbook to produce the product and the samples back in 2001, when it did not return those until much later, and it then became clear in 2010, 2011, that its conduct way back when, it did not return the technology. It may have physically given back the sample. As I understand your complaint, it did not, the 2012 complaint, it didn't recite this story about the exchange of the cookbook and the memorandum of understanding and the NDA and all of that. That's correct. Instead, the 2012 complaint looked more something akin to Form 18, where it was just the barest of components of being able to allege a patent infringement complaint alone. So I guess the concern I have is how you're able to rely on the relation back doctrine when there aren't actual facts in your Form 18 style original complaint that conjures up the notion that there was this relationship that was going on between the two parties back in 2001. But for the patent infringement case, all of the various contracts between the parties, the MOU, the NDA, the exchange of samples, the on-site review of materials, that wasn't needed for that, but it was certainly encompassed by it, because those facts, that conduct, is how Phillips acquired the technology. So on the notice pleading that was required at the outset, that was alleged. That core conduct was alleged. But infringement is a strict liability tort, essentially. It is. You didn't plead willful infringement. No, we didn't, Your Honor, because they were looking at what were the core assertions that the issue for the relation back is that it's that core conduct. It's not different conduct. It's that same core conduct, because Phillips acquired access to the MOTA technology by way of that exchange, the MOU, the NDA, the exchange of samples, all that was encompassed by what they did. Your Honor, you're correct. It wasn't explicitly pled, but it's the same core conduct, and that's the issue. Can I just get some clarification? It seems to me the discussion, now, on what you've been trying to do more recently is to, your main allegation deals with this mis-business opportunities. Is that right? It's several things, Your Honor. What we believe happened is two major things. Phillips, which is an international and well-known producer of electronics goods, basically did a head fake to MOTA. Hey, let's take your side. I'm not going to let you argue the merits of your case here. I don't really need to know. You're trying to amend your complaint. There's nothing I could see in the complaint that really had anything to do with setting the basis for damages for missed opportunities, right? There's no reference in anything you filed so far that deals, that even alleges, and we would have otherwise, during this interim period, been able to get contracts with X, Y, and Z, and we were precluded from doing that because we were misled by Phillips. Any of that in the complaint? Yes, Your Honor. The fraud and business opportunities would have been damages under Counts 4 and Counts 6. I think the eSmart case is critical on that. It shows us that the cost for that missed opportunity, in and of itself, is a damage, and that we don't need to allege damages in the complaint. No, did you allege missed opportunities? Yes, Your Honor. In Counts 6. You want to give me the... The unfair competition, Your Honor. One of the damage zero would be the missed opportunity. You've got to give me a page number in the appendix. If I could look in the rebuttal time, Your Honor, I believe it's in the second minute complaint and I believe that's docket number 131, but let me make sure I have the page. I believe it's page 27, but I'll check when I have time. I seem to recall your complaint alleging that MOTA was actively pursuing business relationships with a lot of different parties, not just Phillips, and then the MOU made it very clear to both parties that the MOU was not binding and not exclusive. I guess what I'm trying to figure out is that based on the documents at hand, there's nothing that specifically directing the parties towards some exclusive relationship where MOTA is binding itself in a way that it's denying itself from dealing with other potential parties in terms of engaging in some joint venture. Everything seemed to be pointing to the opposite. Am I wrong about that? Just slightly, Your Honor. When MOTA came out with its technology, it went to a lot of producers and all these deal with speakers and it's the size of the speaker that's really what's at issue here. They had gone to Detroit and Chrysler was interested and they said, yes, but we don't produce this stuff. Someone's got to produce it for us. Microsoft said, yes, we'd love to have little speakers inside our laptops and desktops because that would really enhance our product, but you've got to find a producer. MOTA went out, it was in PST, and Phillips said, hey, we'll go 50-50 on this. You give us your technology, we'll manufacture it for you. Look at all these opportunities. It was kind of like dating. They just couldn't go out to a lot of other manufacturers while they were still sharing their technology with Phillips. Now, maybe that was naive. Maybe that was bad business on their part, but that's a factual determination that we need to show with respect to damages at the time of trial. Well, you're into the rebuttal. You want to save it and go from the other side? I don't have anything further on it. Okay. We'll save your rebuttal. Good morning. May it please the court, I represent Apelli Phillips. At the core of this dispute is the fact that the second amended complaint pleads misappropriation of trade secrets that happened 13 years ago, and they tried to amend their complaint in 2014. It's too late. The district court found that it's too late because, first of all, two of the counts are preempted. The other two are time barred. To your question, Judge O'Malley, they're all time barred. Let me ask you this. If, in fact, in the original complaint, there is an allegation of deliberate, knowing, and willful infringement, because there actually is, and the facts that would show the deliberate, willful, and knowing infringement are that, in fact, we had this business relationship, and that's how you got this information, wouldn't that arise out of the same facts and circumstances? No, Your Honor. This is a question of whether the complaint relates back. First, and very importantly and dispositively, the issue of relation back was waived. We specifically addressed in our motion to dismiss below the relation back doctrine. We said this does not relate back. MOTA did not respond to that argument. They only raised relation back for the first time on reconsideration. The district court found you cannot raise new arguments on reconsideration. Didn't the district court address it then on recon? And then it continued to in the alternative address it, now to get to the merits of that issue. But it didn't quite come so strongly out and say this is waived. Oh, by the way, I have some thoughts. I thought the district court said it more like this could be waived. This could be grounds for waiver. But in any event, this doesn't relate back. Isn't that a better way of reading the recon decision? I don't think so, Your Honor. The district court gave two alternative bases to deny the motion for reconsideration. The first was this is not appropriate for reconsideration. This should have been raised earlier. The second was, and this goes to the substance of your question, the original complaint does not provide adequate notice to us, Phillips, that this was an allegation. The fact that there is a bare bones paragraph, and it is bare bones, that says the infringement has been willful suggests nothing in any way about a contract that existed, a relationship that existed, some opportunities that were missed, misappropriation of trade secrets. MOTA has gone out of its way in its briefs to accentuate the difference between patented materials, which are public, and non-patented materials. The allegation that we willfully infringed a patent in no way puts us on notice that there's going to be an allegation of breach of contract, trade secret, misappropriation, unfair competition, or fraud. So the court was in the second alternative ground correct in denying that motion, and very importantly, that issue has not been preserved for appeal. The relation back doctrine is one of many arguments and one of many reasons why this doesn't work. What do you mean that issue has not been preserved? It hasn't been preserved because it wasn't part of the original briefing. We opened the door, and MOTA did not respond to it. Meaning below. Below. Certainly it was raised in the briefing. Judge Chen's point is correct. We don't impose waiver in the lower court if the district court didn't impose waiver. So we'd have to read that to really be alternative findings. So assume we don't, and we're looking at the merits. Then it would be preserved for appeal, correct? That is correct. If, in fact, the district court had not said what it said, and said, I'm finding that this should have been raised earlier, the fact that the district court went the extra mile and said, in addition, in case someone disagrees with me, here's the analysis of the merits, shouldn't stop the court from recognizing that the district court, in fact, found that this is something that should have been raised. Do you happen to have the site to the recon decision? To the recon decision? Yeah. Where the district court said what you say it said. Sure. Let me just bring it up. So this is on JA-192 and 193. And it says at the bottom of JA-192, as a threshold matter in its opposition, MoDA completely failed to address whether its contract and trade secret misappropriation claims relate back. This was raised only in Phillips' pleadings. And on the following page, on this basis alone, the court would be well within its discretion to deny reconsideration of this issue. It then goes forward and analyzes on the merits of that issue. Do you understand how we might be able to read that first paragraph a bit ambiguously? In the court merely recognizing that it had the discretion to kick out the issue, but then didn't actually act on that discretion and instead went ahead and did a review of the pleadings. I can see that reading. The language is a little bit ambiguous. When you look at the entirety of the reconsideration order, with many of the arguments that MoDA raised for the first time on recon, virtually everything, this was the standard way that the court addressed it. It said this should have been raised before, but here, let me address it on the merits. I could see how you could read it both ways. We think it's, in view of how the court approached this, clear that the court was denying it on two different bases. But it doesn't matter to us. On the merits, we think it's not a close case. On the merits, there is nothing in that original complaint that suggests in any way that we should have been on notice that there would have been a breach of contract, fraud, misappropriation claim. It's just not there. We cited cases, many cases on this point, that just because there's some interrelationship between the facts, the key is there has to be an interrelationship between the facts that are pled in the original complaint and the facts that are pled in the later complaint. In this case, the facts that are pled in the original case have nothing to do with any of this. The only facts, it's not even a fact, the only allegation in the original complaint that could be pointed to is this allegation of willfulness. But there are no backup paragraphs that say here is why it was willful. It could have been willful, for instance, because we knew about the patent. It could have been willful for any other number of reasons. But there's nothing in the complaint that suggests that it was willful on the basis of the facts that form the basis of their new complaint. So for that reason, the relation back issue for both of those grounds is a non-starter. With respect to the preemption issue, the key here, and I think the court is there, but the key here is take out the trade secret misappropriation facts and what's left. Can I just ask you about why that matters? I mean, your view of the statute of limitations, is that dispositive then of whether we're looking at three years versus six years and does it really matter based on your theory? I'm sorry. Why are we arguing about what is the gravamen of the preemption decision here? Is it the statute of limitations question? No, it's an alternate ground. The first two grounds, the fraud claim and unfair competition, you don't have to reach the statute of limitations question on those because they're preempted. That's the end of the story. Now, with respect to that preemption question, if we were to lose the preemption question, those claims should have been dismissed anyway because of statute of limitations, if that answers the question. With respect to the preemption, take out the trade secret misappropriation basis and see what's left and see whether it states a claim. Now, counsel just pointed you to the unfair competition claim. The unfair competition claim, which I have a flag on here, in the second amendment complaint is at JA37. JA37, as you can see, is three paragraphs that have zero factual allegations. They simply point back and say, because of all the things that we've said before, we also have an unfair competition claim. There's absolutely nothing in there that provides any basis for an independent basis or an independent cause of action. In fact, MOTA admits in its brief that its unfair competition claim is based entirely on the fraudulent misrepresentation claim. So we go back to the fraud claim. The fraud claim is contained. It's at JA30 through JA34. And when pressed in its briefs, MOTA points to paragraphs 54, 57, and 59 as somehow showing an independent cause of action, apart from the misrepresentation or the misappropriation. But there's nothing in those paragraphs that has anything other than misappropriation. Their fraud claim is this. We allegedly fraudulently told them that we were interested. They gave us confidential information. Then we made products with that confidential information. They should have shared in the profits. That is their fraud claim. It's in these paragraphs. That's it. I thought part of their claim also rests on they lost business opportunities with other companies because they spent so much time engaged with you. It denied them abilities to make business arrangements with others. That is not in their complaint. That is completely made up. But that's part of their theory. That's their new theory. There's no question about that. They are now forced to come up with a new theory. The question of preemption asks, look at the complaint, remove the misappropriation stuff, and have you stated a claim? Not can you come up with a claim. That's a different question. If they had originally filed a claim back in 2012 where they had included those allegations, then we would have a different conversation. They still have statute of limitations issues. But putting that aside, the only paragraph that they point to is paragraph 14 of their complaint as supposedly, this is on JA-16, as supposedly disclosing or alleging this missed opportunity theory. That's it. And there's absolutely nothing in that that suggests that they lost opportunities. All of the stuff that we just heard, that Microsoft and Chrysler and all of these opportunities that they couldn't pursue because of our relationship, it's simply not in here. Now, I am not saying that they needed to plead specific customers that they lost or specific opportunities. But they need to say that they were harmed by this. And the only statement of harm in the entire complaint is paragraph 59. That is the only place where they say that our alleged misrepresentations caused them harm. And the harm that they allege is they didn't get the share and the profits of our products. There is nowhere even a glint of a suggestion that they missed opportunities. That's all in the papers. Now, they're stuck with this complaint. The district court properly found that they had waived their request for leave to amend and properly, apart from that, agreed with us that they shouldn't have leave to amend because it's not timely and it would be futile. They're stuck with this complaint. This complaint does not state a basis independent of misappropriation for the fraud claim. I was going to move on to the leave to amend issue. I just have one problem with the whole approach. I've never seen a circumstance where you can say, well, there's a choice of law problem here, but we don't have to choose. As long as we both agree that we don't have to choose, then the court can just take whatever it wants, one from column A, one from column B. I mean, it seems to me that it's a pretty easy analysis, that the contract clearly has to be analyzed under California law. And all the other claims would seem to be under Hawaii law. We agree. The contract claim, I was very surprised to hear counsel referring to Hawaii contract limitations, because the contract says on its face, which was submitted for the first time in opposition to our motion to dismiss, California law applies. The breach of contract statute of limitations is what governs here, and that is four years in California, not six years. With respect to everything else, Hawaii is probably the right law. Everybody agreed, however. When you say everything else, what would those items be? The trade secret misappropriation, fraud, and unfair competition. Those are all Hawaii law. Well, I think, let me put it this way. It's not briefed. The court didn't decide, and the parties haven't taken a position. So it is a question that has not been actually decided by anyone or advocated by anyone. I think there's a very good basis to come to the conclusion that you came to, Judge, which is that Hawaii seems like the naturally right conclusion for those. I guess the point that everybody has agreed on is that with respect to preemption, the laws have developed identically, and for all intents and purposes are the same for the issues presented here. And with respect to statutes of limitations, there are differences in the statutes of limitations. And we've pointed those out in our briefs, but they don't matter to the resolution of the case. Okay. Go ahead. With respect to the, you know, I want to move to the statute of limitation and the discovery rule, because this is really important and to me is the crux of the case. The Supreme Court in California in the Jolly case has already decided that when you have a suspicion of wrongdoing, that triggers the statute of limitations. Does it say what kind of wrongdoing? I mean, in 2008, they had a suspicion of infringement, right? But did they necessarily have a suspicion of fraudulent wrongdoing or breach of contract? Well, yes, they did, because they admitted in their opposition to their motion to dismiss on JA99, they said Mr. Perazzo at that time suspected that we had our technology in their products. But the case law is very clear on this point. The question what type of wrongdoing is explicitly answered by Jolly and by the Fox case. I thought you said that Hawaii trade secret law applies. So why are we talking about a California Supreme Court case? Those cases were adopted by the Association of Homeowners in the Newman case. Okay. Hawaii has adopted California. Exactly. 115 Hawaii 232. They adopted the Jolly suspicion of wrongdoing reasoning and holding. So the question is what does wrongdoing mean? The Fox case is really important here. The Fox versus Ethicon case explicitly asks that and answers that question and says we're not saying you have to suspect every element of a particular cause of action. No, no, no. You have to only suspect that any type of wrongdoing has happened, that you've been injured and that injury has come from that wrongdoing. It is not explicitly nonspecific as to a particular cause of action. They declined in the Fox case to take that approach. And so the fact that they investigated a wrongdoing is proof positive that they in fact had a suspicion of a wrongdoing. We don't parse which wrongdoing. At that moment in time, they were under an obligation to investigate and sue or lose their rights. And that's exactly what the Supreme Court of California said. You cannot wait for the facts to come to you. Once you have a suspicion of wrongdoing, you have to proceed or lose your rights. And that's what happened. What if the person in Costco for Moda said to himself, I wonder if this is infringing our patent and then elects to go trying to investigate whether that's true. Would that wondering, in your view, be the same thing as satisfying the reasonable suspicion of a tort? Well, I think that would be a lot closer to a fact issue. The difference here is that that's not what the record is. The record here is explicitly Mr. Perazzo suspected that our products use the QT technology. That's on JA99 and in paragraph 22 of their Second Amendment complaint. There isn't this question about is the wondering really enough to have suspicion of wrongdoing? The language of the case has been admitted. It's all over Moda's brief. Moda agrees that the suspicion of wrongdoing existed in 2008. The only disagreement is what the legal impact of that suspicion is. Now, very importantly, this is critical and something that may be missed on first reading of the briefs. If Moda is going to rely on the discovery rule, it must rely on something in the complaint. Fox states this explicitly. If you're going to rely on the discovery rule, you have to have pled facts as to when that discovery occurred and why you couldn't have discovered it earlier. The only thing in the complaint that comes close to that is paragraph 22 that refers to this summer of 2008 Costco experience. So all of this notion that, oh, we discovered it later, that is absolutely irrelevant. It is the law in California. By the way, in the April case that Moda cites from 1983, it says the same thing. The Supreme Court of California and Hawaii have been very clear on this. You have to put it in your complaint. So the only date that they could possibly rely on for discovery is 2008. But that's already too late. They're now six years after that date for all the applicable statutes. Okay. We've exceeded your time. Thank you very much, Your Honor. Just one point, Your Honor. I believe that the three cases that are most relevant on the statute of limitations are DIRECTV, Thomas v. Kidani, and the Yamaguchi case. And they clearly say that the plaintiff must have knowledge of all the elements of the claim. And at that point, that's when the statute of limitations starts to run. And that's all I have, Your Honor. Can you just respond to this JA99? It is a pretty powerful paragraph where it says that he became suspicious of Phillips' use of the technology. And it said he understood that the samples, written descriptions, and explanations of the technology that PSD had allowed Phillips to keep in good faith gave Phillips all it needed to duplicate the motor technology and place it in Phillips' products. And he said he needed to investigate after that, but still. He didn't make all that connection in the summer of 2008 while he was standing in Costco. When he's standing in Costco, he sees a Phillips home entertainment system, a boom box, that looks different than the ones they had had years before. The size of the speakers has been significantly reduced. But it's not as if he could buy that, take it home, take off the back and go, oh, there's something that says motor QT technology. What he then had to do was go out and reverse engineer that to see if that's his technology. And that took time, money, and effort. And that's why I say on the facts before the court at the motion to dismiss, at the standard that Judge Kern was supposed to be looking at, he should have given all the sway to Mr. Pratso's testimony that it wasn't until December of 2010, early 2011, that he knew about that. But at what point do you go from a suspicion to firm knowledge? Late to 2010, Your Honor. Right, but I thought the law is a suspicion of wrongdoing, not firm knowledge. It's an understanding of all the elements involved. Not just a suspicion that, boy, that may be something that he needed to know and was told by counsel that he needed to be able to draw the line between that boom box and his technology. And that took some looking at. It wasn't as if he looked at a pair of glasses and he goes, wow, that's my design. I could tell it's my design because that's what I drew. This is electronic technology that he had to reverse engineer to come to determination. And that took him some time and effort, Your Honor. Thank you. Thank you. I will thank both sides. The case is submitted. That concludes our proceedings.